UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES R. SMITH,

        Petitioner,

v.                                                            Case No. 19-C-1701

REED RICHARDSON,

        Respondent.

## SCREENING ORDER

On November 19, 2019, Petitioner Charles R. Smith, who is currently incarcerated at Stanley Correctional Institution, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. After Petitioner entered a guilty plea in Milwaukee County Circuit Court, he was convicted of one count of first degree reckless homicide and was sentenced to 27 years of initial confinement and 10 years of extended supervision.

I must give the case prompt initial consideration pursuant to Rule 4 of the Rules Governing § 2254 Cases, which reads:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time . . . .

Rule 4, Rules Governing § 2254 Cases. During my initial review of habeas petitions, I look to see whether the petitioner has set forth cognizable constitutional or federal law claims and exhausted available state remedies.

The petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.* This is, and was meant to be, an intentionally difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington*, 562 U.S. at 103).

"Habeas corpus petitions must meet heightened pleading requirements . . . ." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The petition must "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground." 28 U.S.C. § 2255, Rule 2(b); *see also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) ("The § 2254 Rule and the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as

2

authorized under Federal Rule of Civil Procedure 8(a).").  The reason for the heightened pleading requirement in habeas cases, as the Eleventh Circuit noted in *Borden*, is obvious:

> Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards.  The evidence supporting a claim brought under the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), for example, may not be available until the prosecution has run its course.  The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before.  Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

*Id.* at 810.  Were the rule otherwise, federal habeas would be transformed into "a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim."  *Id.* at 810 n.31.

Smith was charged with one count of first-degree intentional homicide in connection with the stabbing death of Javier Bautista.  Smith rejected a plea offer from the State one week before the trial but accepted a different plea offer on the scheduled trial date.  At the plea hearing, the State advised the trial court that it had filed an amended information that reduced the charge against Smith to one count of first-degree reckless homicide, for which the maximum sentence is forty years of initial confinement and twenty years of extended supervision, *see* Wis. Stat. §§ 940.02(1); 939.50(3)(b), and recommended a prison sentence of an unspecified length to be determined by the court.  The trial court confirmed with trial counsel that the State had correctly stated the plea agreement and asked Smith whether he understood.  Smith replied, "yes."  *State v. Smith*, No. 2015AP1216-CR, at ¶ 4 (Wis. Ct. App. Mar. 29, 2016).  When the trial court asked Smith, "And you also understand that the court's not bound by any negotiations or plea bargains.  Do you

understand that," Smith responded, "yes." *Id.* The trial court continued the plea colloquy with Smith and ultimately found him guilty. It ordered a presentence investigation (PSI) and directed that the PSI writer not make a sentencing recommendation. *Id.* ¶ 5.

At sentencing, the State restated the plea agreement: "The State is recommending prison leaving the length up to the court . . . . The defense is free to argue." *Id.* ¶ 6. After the State summarized the offense, the victim's daughter and sister addressed the court and urged it to impose the maximum sentence. Defense counsel offered his sentencing recommendation as well:

> [Smith] is asking the court to consider probation. I know the court is required to do that. I told him that because of the seriousness of the offense that that is something the court will consider but that I'm not optimistic that's the way the court would have to go given the court has an obligation to impose a sentence that's consistent with the seriousness of the offense and need for some punishment. So I see a prison case here.
>
> What I'm asking the court to consider is a total sentence of 15 years broken down into five of initial confinement, ten of extended supervision.

*Id.* ¶ 7. Smith exercised his right of allocution and expressed his remorse. He did not discuss the potential length of his sentence.

The trial court imposed a sentence of twenty-seven years of initial confinement and ten years of extended supervision. Smith filed a postconviction motion, with the assistance of appointed postconviction counsel, seeking to withdraw his guilty plea based on the alleged ineffective assistance of trial counsel. He alleged that his plea was not knowingly, voluntarily, and intelligently entered because, when he spoke to his trial counsel before entering his plea, he "was promised a sentence of ten years consisting of five years of incarceration and five years of extended supervision." *Id.* ¶ 8. The trial court denied Smith's postconviction motion, and the Wisconsin Court of Appeals affirmed. Smith then filed a *pro se* Wis. Stat. § 974.06 motion alleging that

4

postconviction counsel provided ineffective assistance when he filed the first postconviction motion by (1) not attaching affidavits from Smith's girlfriend and Smith's mother to the motion and (2) not alleging that trial counsel had provided ineffective assistance by failing to advise Smith of the potential defense strategy of defense expert opinion testimony. The postconviction court denied the motion and the Wisconsin Court of Appeals affirmed. The Wisconsin Supreme Court subsequently denied Smith's petition for review.

In his habeas petition, Smith asserts three grounds for relief: (1) his post-conviction counsel provided ineffective assistance in failing to raise a claim that his trial counsel was ineffective in failing to advise him that he could be sentenced to more than 10 years of imprisonment; (2) he should be able to withdraw his guilty plea because the plea colloquy was deficient; and (3) trial counsel was ineffective in failing to advise Smith of the potential defense of self-defense. Smith did not exhaust any of these claims in state court. A district court may not adjudicate a habeas petition that contains both exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Rather than dismiss a petition containing both exhausted and unexhausted claims, "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state court remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Rhines v. Weber*, 544 U.S. 269, 275–76 (2005). A stay should not be granted, however, when there is not good cause for the petitioner's failure to exhaust his claims in state court or when the unexhausted claims are plainly meritless. *Id.* at 257. In this case, each of Smith's unexhausted claims is plainly meritless.

First, Smith asserts that his postconviction counsel provided ineffective assistance when he failed to raise an ineffective assistance of trial counsel claim in his postconviction motion. A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) that counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even though Smith's initial postconviction motion did not raise a separate ineffective assistance of trial counsel claim, Smith rested his claim for plea withdrawal on allegations that he received ineffective assistance from trial counsel. The Wisconsin Court of Appeals concluded that Smith was not entitled to relief because his motion did not raise sufficient facts with respect to the

6

advice Smith claims he received before he pled guilty. *Smith*, No. 2015AP1216-CR, at ¶ 15. The court explained:

> While the motion begins with the assertion that Smith "entered his plea on the understanding that he was promised a sentence of ten years, consisting of five years [of] incarceration and five years [of] extended supervision," the motion never asserts that trial counsel actually told Smith that a particular sentence was guaranteed. The motion contends that trial counsel's explanation "contained repeated references to 5 years in prison," but that is understandable, given that trial counsel ultimately recommended that Smith serve five years of initial confinement. In order to prove deficient performance, Smith is required to allege facts showing that trial counsel's actions or omissions "fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. The postconviction motion does not adequately allege anything that trial counsel did that would lead a court to conclude that he performed deficiently.

*Id.* The court then found that the record also demonstrates that Smith is not entitled to relief:

> Regardless of what trial counsel allegedly told Smith in the bullpen, the State clearly stated at the plea hearing that it would be recommending prison in an amount left to the trial court's direction and that the plea agreement provided that the victim's family members would be allowed to offer their own sentencing recommendations. Both of those plea terms are clearly inconsistent with Smith being guaranteed a particular sentence. The trial court explicitly asked Smith whether he understood the State's recitation of the plea agreement and Smith said yes. . . . [T]he record indicates that the terms of the plea agreement were stated in open court at the plea hearing and sentencing hearing, that Smith explicitly acknowledged those terms at the plea hearing, and that Smith did not subsequently say anything about a guaranteed five-year term of initial confinement, despite being given opportunities to do so when he met with the PSI writer and at sentencing. The record conclusively demonstrates that Smith is not entitled to relief.

*Id.* ¶¶ 16, 19. The Wisconsin Court of Appeals' decision that trial counsel did not perform deficiently represents a reasonable application of *Strickland* and was not contrary to clearly established federal law. Postconviction counsel was therefore not ineffective for failing to raise a separate ineffective assistance of counsel claim in the first postconviction motion.

7

Next, I address Smith's claim that he should be able to withdraw his guilty plea because the plea colloquy was deficient. Although Smith asserts that the trial court failed to ascertain Smith's understanding of the elements of the crime charged during the plea colloquy, he does not claim that he misunderstood the elements of the crime when he pled guilty or that his guilty plea was coerced, unknowing, or involuntary. In short, Smith has not alleged facts that, if proven, would undermine his testimony that he understood and agreed to his guilty plea. This claim must therefore be dismissed.

Finally, Smith asserts that his appellate counsel and trial counsel were ineffective because trial counsel failed to advise Smith of the potential defense of self-defense. Smith's argument is belied by the fact that trial counsel sought to use Dr. Anapol, the director of the forensic science unit at the University of Wisconsin-Milwaukee, as an expert to support a self-defense claim and litigated the admissibility of that expert's testimony after the State challenged its admissibility. Defense counsel argued that Dr. Anapol was sufficiently qualified to offer expert testimony on the cause of Bautista's death. The State asserted that Dr. Anapol was not qualified to offer testimony in support of Smith's self-defense claim because Dr. Anapol was not an expert in the area of soft tissue injuries and that allowing him to testify that Bautista's injuries were consistent with a theory of self-defense would usurp the fact finding process. The trial court considered the parties' written arguments and conducted a hearing on the issue. It ultimately concluded that the defense could call the expert witness but only permitted Dr. Anapol to testify that Bautista's wounds were consistent with the victim being on top of Smith during the stabbing. Smith was present in court when the court issued its decision. Dkt. No. 1-1 at 4. In short, Smith has not demonstrated that his trial counsel failed to advise him of a potential self-defense theory. Smith's petition contains no allegations regarding the

ineffectiveness of appellate counsel but, because trial counsel was not ineffective, it follows that postconviction counsel was not ineffective. Accordingly, these claims will be dismissed.

**IT IS THEREFORE ORDERED** that this petition is summarily dismissed pursuant to Rule 4 of the Rules Governing § 2254 Cases. The Clerk is directed to enter judgment dismissing the case.

**IT IS FURTHER ORDERED** that Smith's motion to appoint counsel (Dkt. No. 2) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**. I do not believe that reasonable jurists would believe that Smith has made a substantial showing of the denial of a constitutional right.

Smith is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Petitioner decides to appeal, he should also request that the court of appeals issue a certificate of appealability.

Dated this __27th__ day of November, 2019.

                                           s/ William C. Griesbach
                                           William C. Griesbach, District Judge
                                           United States District Court